## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

HERBERT WALLACE, JR.,   :
           :
    Claimant,   :
           :
v.          :   CASE NO. 4:12-CV-107-CDL-MSH
           :    Social Security Appeal
CAROLYN COLVIN,    :
Commissioner of Social Security, :
           :
    Defendant.   :
_____

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Claimant's application for a period of disability and disability insurance benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d

1206, 1210 (11th Cir. 2005) (internal quotation marks omitted).  The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1]  *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision.  *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam).  The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it.  *Id.*

The claimant bears the initial burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir.1986).  The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic.  *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).[2]  A claimant seeking Social Security disability benefits must demonstrate that he/she suffers from an impairment that prevents him/her from engaging in any substantial gainful activity for a

---

[1]    Credibility determinations are left to the Commissioner and not to the courts.  *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2]    In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

twelve-month period.  42 U.S.C. ' 423(d)(1).  In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act.  20 C.F.R. ' 404.1 *et seq*.

Under the Regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner determines whether the claimant is working.  *Id.*  If not, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  *Id.*  Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments.  *Id.*  Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the "Listings").  *Id.*  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  *Id.*  Fifth and finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Id.*  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

## Administrative Proceedings

Claimant protectively applied for a period of disability and disability insurance benefits on March 24, 2008, alleging disability as of June 1, 2004, due to hypertensive cardiomyopathy, skeletal condition, enlarged heart, knee, ankle, and neck pain, migraines, PTSD, and a sleep disorder.  (Tr. 17; ECF No. 13.)  Claimant's application was denied, and Claimant timely requested a hearing before an Administrative Law Judge ("ALJ").  The Claimant appeared before an ALJ for a hearing on April 27, 2010, and following the hearing, the ALJ issued an unfavorable decision on May 28, 2010.  (Tr. 15-26.)  The Appeals Council ultimately denied Claimant's Request for Review on March 15, 2012.  (Tr. 1-3.)  This appeal followed.

## Statement of Facts and Evidence

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Claimant had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 17.)  The ALJ found that Claimant had disc bulges in the lumbar and cervical spine, osteoarthritis, hypertension, cardiomyopathy, and PTSD.  (*Id.*)  The ALJ then determined that Claimant's severe impairments did not meet or medically equal, either individually or any combination, any one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

The ALJ next found that Claimant had the residual functional capacity (RFC) to perform a range of light work in that he could sit, stand and walk six hours in an eight-

hour workday, he could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently and he could reach overhead occasionally (Tr. 19). The ALJ also found that Plaintiff should avoid concentrated exposure to extreme heat or cold, avoid ladders, ropes and scaffolds or hazards and that he could understand, remember and follow simple instructions, maintain concentration, persistence and pace for simple tasks and interact with coworkers and the public occasionally (*Id*).   Based on his RFC and the medical evidence, the ALJ then determined that Claimant could not perform his past relevant work.  (Tr. 24.)   The ALJ determined that Claimant was 54 years old on his date last insured, which is considered to be an individual closely approaching advanced age.  (*Id.*) The ALJ further found that Claimant had a high school education and could communicate in English.  (*Id.*)  After consulting the Medical-Vocational Rules (GRIDS) and utilizing the testimony of a Vocational Expert ("VE"), the ALJ determined that Claimant was not disabled within the meaning of the Regulations and that there were jobs available which existed in significant numbers that Claimant could perform.  (*Id.* at 25.)

## ISSUES

**I.**  **Whether the ALJ erred in finding that Claimant could perform a full range of light work.**

**II.**  **Whether the ALJ erred in assessing Claimant's PTSD.**

**III.**  **Whether the ALJ erred in evaluating Claimant's credibility.**

**IV.**  **Whether the ALJ erred in establishing that there is other work in the national economy that Claimant can perform.**

5

## DISCUSSION

**I.      Did the ALJ err in finding that Claimant could perform a full range of light work?**

Claimant asserts as his first enumerated error that the ALJ found that he could perform a full range of light work although, as he alleges, "the record is devoid of any assessments from any examining physicians supporting such a finding." (Cl's Br. 5; ECF No. 15.)  It is Claimant's burden to prove that he is disabled and unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  Here, the ALJ carefully and thoroughly reviewed and discussed the longitudinal record of Claimant's care and treatment in making her residual functional capacity assessment. (Tr. 18-24.)   The ALJ's RFC finding that Claimant's physical impairments were well controlled by medication and stable is amply supported by evidence in the record. (*Id.*)  Although objective medical evidence and the opinions of Claimant's treating physician, Michael Diluna, M.D., establish that in August 2005 Claimant had disc bulges and osteoarthritis as well as mild degenerative disease, Dr. Diluna found only mild foraminal stenosis with normal disc height and no canal stenosis. (Tr. 287.)  The ALJ discussed Dr. Diluna's findings and noted that Claimant has normal tone, bulk, power, sensation and reflexes.  (Tr. 22.)  The prescribed course of treatment was non-steroidal anti-inflammatory medication and a TENS unit with a referral to a pain clinic.  (Tr. 287.)   Dr. Diluna expressed no opinion that Claimant suffers from functional limitations on his ability to work that would render him disabled. (*Id.*)  The ALJ took

6

account of Claimant's back problems in establishing Claimant's RFC by limiting the weight he can lift, carry push and pull to 20 pounds occasionally and 10 pounds frequently with a further restriction to avoid ladders, ropes and scaffolds.  (Tr. 19.) Claimant has not carried his burden to show by a preponderance of evidence that his back ailments disable him from work.

 In addition to problems with his back, Claimant also contends that bad knees and the pain associated therewith render him disabled and entitled to benefits.  (Cl.'s Br. 5.) Yet, like the error asserted regarding his back trouble, no physician has expressed that there are functional limitations on Claimant's ability to work resulting from bad knees. Indeed, the ALJ in formulating her RFC assessment did not find the knee problems complained of to be severe and she specifically afforded great weight to the assessment of the physical consultative examiner that Claimant is capable of performing light work with limitations in using the upper extremities.  (Tr. 23, 24).  She found that Claimant was stable on medication as of September 30, 2009, and March 1, 2010, when taking prescribed medications and naproxen (frequently obtained by over-the-counter purchases of name brands such as Aleve).  (*Id.*)

 While Claimant does not address his heart ailment in the portion of his brief he styles "(r)elevant medical evidence" (Cl.'s Br. 3), nor does he specifically take issue elsewhere with the manner in which the ALJ considered his heart problems, since the ALJ found cardiomyopathy to be a severe impairment, the Court finds that the ALJ

evaluated Claimant's cardiomyopathy both as a severe impairment alone and in combination with other impairments. In her decision to deny benefits to Claimant, the ALJ examined reports from November 10, 1999, through December 26, 2006, and covered the findings of each of the six physicians who saw and treated Claimant for cardiomyopathy and discussed each physician's various testing and opinions, who ultimately determined that Claimant has no structural heart disease despite hypertension which, considering the blood pressure readings in the record, consistently failed to reach the level required for a diagnosis of "moderate to severe." (Tr. 20, 21). The physicians found no active pulmonary disease and no significant abnormalities of the heart. The last clinical presentation considered by the ALJ was with Dr. Brown, who examined and conducted objective medical testing on two occasions, May 24, 2005, and December 26, 2006. (Tr. 22.) Dr. Brown opined that Claimant's heart was top normal with slight enlargement and low normal left ventricular systolic performance but he found no perfusion abnormality and concluded that Claimant's overall study was "normal." (Tr. 22). To the extent that Claimant contends that his cardiomyopathy is disabling, that assertion lacks merit.

## II.    Did the ALJ err in evaluating Claimant's PTSD?

The issue most vigorously contested by Claimant is his asserted disability resulting from post-traumatic stress disorder (PTSD). (Cl.'s Br. 11.) The record reveals that the ALJ found sufficient evidence of PTSD to include it as a severe impairment. (Tr.

18-19.)  However, when considered in light of Claimant's activities of daily living and analyzing his mental impairments pursuant to both Paragraph B and C criteria, the ALJ found only moderate restriction on Claimant's activities of daily living, moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence and pace with no documented episodes of decompensation.  (*Id.*)  Claimant was found to be not credible in his testimony as to the extent of the limiting effects of his mental impairments.  (Tr. 20.)  Specifically, the ALJ noted that Claimant enjoys playing with his dog for whom he is the care provider, shops, drives, attends entertainment events, buys and reads many books and has a collection of over 3000 DVDs which he likes to watch.  (*Id.*)

Ample support for the ALJ's decision to discount Claimant's credibility is found in the examination and report of Dr. Philip Kaplan, a psychologist and consultative examiner to whom the ALJ afforded great weight. Dr. Kaplan found Claimant to be fully capable of work and lacking only in motivation. (Tr. 24.)  Concern was expressed by Dr. Kaplan that Claimant chose to quit gainful employment when he became concerned that the Veterans Administration might reduce the $2,823.00 he receives monthly for military disability if the Administration discovered he was working. (*Id.*)  Therefore, the decision of the ALJ to discount Claimant's credibility in his account of the problems he encounters in daily life as a result of PTSD and mental impairments associated therewith

9

is well supported by substantial evidence in the record as a whole and Claimant's assertion of error is without merit.

### III.   Did the ALJ err in assessing the credibility of the Claimant?

Claimant next alleges that the ALJ erred in evaluating his subjective allegations of pain.  (Cl.'s Br. 14.)   The Eleventh Circuit has held that in order for a claimant's subjectively alleged pain to be deemed credible by the ALJ, he must first show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ must "clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations and citations omitted). Social Security Regulation 96-7p states in relevant part, that:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

Additionally, 20 C.F.R. § 404.1529(a), in relevant part, states that:

10

Statements about your pain or other symptoms will not alone establish that
you are disabled; there must be medical signs and laboratory findings
which show that you have a medical impairment(s) which could reasonably
be expected to produce the pain or other symptoms alleged and which,
when considered with all of the other evidence (including statements about
the intensity and persistence of your pain or other symptoms which may
reasonably be accepted as consistent with the medical signs and laboratory
findings), would lead to a conclusion that you are disabled.

The record reveals that the ALJ discussed Claimant's medical history and cited to
medical evidence regarding the Claimant's allegations of the severity of his pain. (Tr. 19-
22).   The ALJ then referenced the pain standard.  *Id.*   The ALJ acknowledged the
requirements and procedures she must follow in assessing Claimant's residual functional
capacity, making specific reference to 20 C.F.R. § 404.1529 and Social Security Rulings
96-4p and 96-7p, as well as 20 C.F.R. § 20 C.F.R. § 404.1527 and Social Security
Rulings 96-2p, 96-5p and 96-6p and 06-3p.  *Id.*

"Although this circuit does not require an explicit finding as to credibility, ... the
implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251,
1255 (11th Cir.1983).  "The credibility determination does not need to cite 'particular
phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to
enable [the district court or this Court] to conclude that [the ALJ] considered her medical
condition as a whole." *Foote*, 67 F.3d at 1561.

Applying the *Holt* test to this Claimant's pain allegations, the Court concludes that
he failed to overcome the findings of the ALJ by establishing either that the medical
evidence confirmed the severity of his pain or that his medical condition was so severe as

11

to reflect the alleged pain.  It is further found that the ALJ's credibility determination was in compliance with prevailing Eleventh Circuit law.  In *Flowers v. Comm'r of Soc. Sec.,* the Eleventh Circuit held that "[i]f the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires ... that the testimony be accepted as true" in support of his argument.  *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 742 (11th Cir. 2011).  In this case, the ALJ cited to the medical evidence of record as well as the testimony of the Claimant to evaluate Claimant's credibility.

As noted above, the court may not decide facts, re-weigh evidence, or substitute its judgment for that of the Commissioner, but must decide if the Commissioner applied the proper standards in reaching a decision.  Thus, it is found that the ALJ applied the proper pain standard and supported her determinations with substantial evidence in the record.

## IV.   Did the ALJ err in determining that there was other work which exists in the national economy which Claimant could perform?

Lastly, Claimant contends that the ALJ erred in determining that there were other jobs that he could perform.  (Cl.'s Br. 16.)  Specifically, he contends that after determining he could perform a range of light work, the ALJ asked a Vocational Expert (VE) to testify as to what jobs were available to a person with claimant's RFC and limitations.  (*Id.*)  Claimant argues that the hypothetical question asked of the VCE did not fully account for his impairments.  (*Id.*)

12

As noted above, at step five of the sequential analysis where it is determined that a claimant cannot perform past relevant work, the ALJ, who bears the burden at this step, must decide whether a claimant's RFC allows him to perform other work which exists in the national economy.  20 C.F.R. § 416.920(g).  Where applicable, the ALJ may either apply the Medical-Vocational Guidelines ("GRIDS") or obtain the testimony of a VE. *Phillips,* 357 F.3d at 1239, 40.  In this case, because the Claimant was found to have non-exertional limitations, the ALJ utilized the assistance of a VE.  *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted).  The ALJ is not required to include in the question claims of impairment that he has found to be unsupported. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004).

Claimant argues that it was error for the ALJ not consider the extent of any erosion of the occupational base as required by SSR 83-10 in the hypothetical questions she asked of the VE.  (Cl.'s Br. 12.)  "Occupational base" as defined in the Regulations, is the estimated number of jobs that an individual can perform based on his RFC, considering both the determined exertional and nonexertional limitations and restrictions. *See* SSR 83–10.  When a claimant's RFC includes nonexertional limitations and, thus, does not exactly match with the description of any jobs in the full range of work, the

13

occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability.  *See* SSR 83–12. The ALJ must then consider the extent of any erosion of in his analysis.  *Id.*  When the extent of erosion of the occupational base is not clear, the ALJ should consult a VE. *See id.*

In this case, the ALJ recognized that Claimant's ability to perform the full range of light work was hindered by the additional limitations that the ALJ included in his RFC. (Tr. 20.)  Accordingly, the ALJ asked the VE at the hearing if there would be any jobs available for someone with Claimant's exertional and non-exertional limitations.  (Tr. 65-67.)  The VE then testified that there were such jobs available in the national economy which the person could perform.  (Tr. 71.)  As such, there is no merit to Claimant's claim that the ALJ failed to account for the extent of the erosion of the occupational base in the hypothetical questions she asked of the VE.

## CONCLUSION

WHEREFORE, for the foregoing reasons, it is RECOMMENDED that the Commissioner's decision in this case be AFFIRMED.  Pursuant to 28 U.S.C. § 636(b)(1), the Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within fourteen (14) days after being served a copy of this recommendation.

SO RECOMMENDED, this, the 29th day of August, 2013.

S/ STEPHEN HYLES
UNITED STATES MAGISTRATE JUDGE

14